However obligatory it may have been for the defendants to give preference to former employés of the late inspector of gas meters, there certainly was an active duty imposed upon the relators to promptly assert their right to transfer for employment by the defendants. The defendants in the answering affidavits allege that they were unaware of the fact that the relators were such former employés until May 8, 1908, in the case of Rehm, and the commencement of this proceeding in the case of Gordon. It appears, however, by supplementary affidavits, that Gordon made known his former employment in July, 1907, and it is also shown by a paper purporting to be an affidavit of Justrow Alexander—presumably the late state inspector of gas meters—that on or about July 1, 1907, he delivered, upon request, to commissioner Maltbie, one of the defendant commissioners, a complete list of his former employés, among which appeared the names of the relators. These affidavits have been submitted without objection thereto, and hence have been considered by the court.

Assuming that it thus became incumbent upon the defendants to transfer the relators to their employment, the fact remains that this duty has been persistently neglected, and the relators have rested quietly and failed to assert the remedy here invoked until June 3, 1908 (a period of 11 months), when the orders that defendants show cause were obtained in these proceedings. I think the relators have delayed too long, and that their right to the writ of mandamus should be denied for laches. People ex rel. Craft v. Keating, 49 App. Div. 123, 63 N. Y. Supp. 71, and cases cited. No satisfactory explanation of the delay has been made. During this time the defendants have, by selection from the state civil service list, appointed other persons to the position of gas meter tester, and it is shown that there is not now, and will not be for several months, need for the service of additional men in such position.

There being no vacancy, or need of additional employés in the position of gas inspector or tester, it is not the duty of the defendants to now give employment to the relators. Matter of Breckenridge v. Scannell, 160 N. Y. 103, 54 N. E. 670; People ex rel. Chappel v. Lindenthal, 173 N. Y. 524, 66 N. E. 407.

The motions should be denied.

---

### GENESEE RIVER R. CO. v. BOYINGTON et al.

(Supreme Court, Special Term, Cattaraugus County. September 26, 1908.)

1. EMINENT DOMAIN—DAMAGES INFLICTED ON ABUTTING OWNERS—LIABILITY.
   Damages inflicted on abutting owners in the performance of a public work, reasonably and properly conducted, are regarded as damnum absque injuria.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 299, 300.]

2. SAME—"JUST COMPENSATION."
   The term "just compensation," when applied to the taking of land for railroad purposes under the power of eminent domain on making "just compensation," means that the owner shall receive, first, the full value

of the land taken, and, second, where a part only of the land is taken, a fair and adequate compensation for all injury to the residue sustained or to be sustained by the construction and operation of the railroad, determined after a consideration of the advantages and disadvantages resulting and to result from the operation of the railroad.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 171–179, 325.

For other definitions, see Words and Phrases, vol. 4, pp. 3897–3902.]

. 3. SAME.

A railroad company, having the right to construct two additional tracks on the right of way of another company, sought to condemn the land of an individual necessary to support the tracks. It was not proposed to · construct any part of the iron work on the property taken. *Held*, that the individual was entitled to receive full value for the land taken and consequential damages resulting from the construction and operation of the railroad, for a railroad cannot be separated in its parts, distinguishing between earthworks necessary to sustain railroad tracks and the tracks themselves.

Proceeding by the Genesee River Railroad Company against Ella M. Boyington and another to condemn· land for railroad purposes. Report of the commissioners affirmed.

F. A. Robbins, for plaintiff.

M. B. Jewell, for defendants.

WOODWARD, J. By agreement this proceeding is to be treated as a motion to confirm the report of commissioners in awarding damages to the defendant in a proceeding to condemn a portion of her premises for the purposes of the plaintiff's railroad. The facts are very simple. The plaintiff has condemned and appropriated to its own use about one-third of an acre of the defendant's farm, extending along the right of way of the Erie Railroad Company near Olean. It appears from the record that this land is necessary to support the earthwork which it has been found necessary to construct to support two tracks of the plaintiff's railroad, the rails of which are to be laid upon the right of way of the Erie Railroad Company, and the question presented is the measure of damages to be allowed to the defendant. The plaintiff concedes that the defendant is entitled to the full value of ·the property actually taken, but · contends that, as the‾ tracks to be constructed are to be upon the lands of the Erie Railroad Company, the latter is not to be compensated for any consequential damages; that the rule is to be applied which prevails in those cases where no lands of the party are actually taken, the damages resulting solely from the proximity of the public work.

It is undoubtedly true that damages inflicted upon abutting owners in the performance of a public work, reasonably and properly conducted, are regarded as damnum absque injuria. Bates v. Holbrook, 171 N. Y. 460, 469, 470, 64 N. E. 181. But this is not the case of an abutting owner. The plaintiff in this action is not the owner—so far as this record shows—of the right of way on which it is proposed to lay these two lines of track. It is necessary, it appears, to take the property of the defendant for the purpose of supporting the earthwork necessary to the construction of the railroad tracks upon the right of way of the Erie Railroad Company. It has no right to take the‾ de-

fendant's property for the purpose of constructing an earthwork upon the same, except as this is incident to, and a necessary part of, the construction of a railroad. It is its position as a railroad corporation, taking the property for railroad purposes, that enables it to take the property at all, and the fact that it is not proposed to construct any part of the iron work upon the property taken has no bearing upon the question whatever.

Assuming that the plaintiff, under an arrangement with the Erie Railroad Company, has a right to construct as many tracks as it may desire upon the right of way of the latter, without compensation to the defendant so long as none of her property is taken, the situation is changed when it becomes necessary to take any portion of the defendant's real estate for the purposes of the construction and operation of the railroad. It takes such property under the power of eminent domain. It takes it upon the condition that it shall afford to the owner "just compensation," and this term has been defined to mean, in such cases, that the owner is "to receive, first, the full value of the land taken, and, second, where a part only of the land is taken, a fair and adequate compensation for all injury to the residue sustained or to be sustained by the construction and operation of the railroad." Newman v. M. E. R. Co., 118 N. Y. 618, 623, 23 N. E. 901, 7 L. R. A. 289, and authorities there cited. "The first element in the award," continue the court, "represents the compensation for the land which the railroad takes, and to which it requires title. The second element represents damages which are the result or consequences of the construction of the road upon property not taken, and which the owner still retains. Such damages are wholly consequential, and to ascertain them necessarily involves an inquiry into the effect of the road upon the property, and a consideration of all the advantages and disadvantages resulting and to result therefrom. * * * Whatever land is taken must be paid for by the railroad company at its full market value, and from such value no deduction can be made, although the remainder of the landowner's property may be largely enhanced in value as a result of the operation of the railroad. But, in considering the question of damages to the remainder of the land not taken, the commissioners must consider the effect of the road upon the whole of that remainder, its advantages and disadvantages, benefits and injuries, and if the result is beneficial there is no damage, and nothing can be awarded." This case is cited and relied upon in South Buffalo Ry. Co. v. Kirkover, 176 N. Y. 301, 305, 68 N. E. 366, and unquestionably is the law of this state upon this point, as it should be, for it is just to all parties concerned.

The property of the defendant is taken for the purpose of constructing and operating two additional tracks upon the right of way of the Erie Railroad Company (the latter probably being the ultimate real party in interest, the plaintiff company being organized for the purpose of doing this work, with a view to ultimate consolidation), and these two tracks pass through the defendant's farm, separating her house and barns from the pasturage of the remainder, the premises being used as a dairy; and the commissioners who have viewed the

premises, and who have heard the evidence, have awarded the defendant $700, this including the fee to one-third of an acre of land and the consequential damages. There is no suggestion that this award is excessive, or that the defendant has not, in fact, sustained this damage; but it is urged that she is not entitled to the consequential damages as a matter of law. I am of the opinion that she is entitled to the full value of the land taken, and that she is entitled to such consequential damages, taking into consideration the advantages and disadvantages of the construction and operation of the railroad, as will result from such use. A railroad cannot be separated in its parts, distinguishing between earthworks necessary to sustain a railroad track and the tracks themselves, any more than we can separate a railroad from its depots, freight stations, franchises, etc.; and where property is taken out of a plot or farm, leaving a remainder, the person whose property is taken is entitled to the benefit of the rule which we have cited above, even though the tracks are laid upon a right of way belonging to one not a party to the proceeding.

The report of the commissioners should be confirmed, with costs.