JAMES JONES *et ux. vs.* PROVIDENCE REDEVELOPMENT AGENCY.

MARCH 9, 1961.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

CONDON, C. J.   This is a petition for assessment of damages which was brought in the superior court pursuant to G. L. 1956, chap. 45-32, as a result of condemnation proceedings.   After a trial the jury returned a verdict for the petitioners for $15,200.   However, they were dissatisfied with that sum and filed a motion for a new trial which the trial justice denied.   Thereafter they duly prosecuted the instant bill of exceptions to this court.

Under their exceptions which relate to certain rulings on the admission or exclusion of certain evidence and to an objection to a portion of the charge to the jury they have

briefed and argued four points. I. Proffered evidence of the availability of real property of the type which was taken in the condemnation proceedings was erroneously excluded. II. The trial justice erred in allowing one of petitioners' expert witnesses to be interrogated on the sale price of certain parcels of real estate in the vicinity of petitioners' property without first requiring respondent to establish that such real estate was comparable. III. The trial justice erred in allowing respondent's expert witness to testify that certain properties in another section of Providence were comparable to those in petitioners' locality. IV. The trial justice erred in charging the jury that they should decide the value of petitioners' property without regard to the fact that it was occupied by the owner and that only in this way could they decide in accordance with the law. We shall discuss those points in that order after briefly summarizing the undisputed facts in evidence.

The petitioners, a Negro couple, are husband and wife and owned a certain parcel of real estate on Olney street on the east side of Providence, which parcel was condemned by respondent for redevelopment. It comprised 10,774 square feet of land on which were located two frame dwellings of three tenements each. The petitioners occupied the second floor tenement of one house and rented all the other tenements. They claimed that the fair value of their property, considering that it was owner-occupied and available to members of their race and that such property was in dwindling supply in Providence, was at least $23,000. In support of that claim they presented the testimony of two expert real estate witnesses.

Samuel Wilk, a real estate broker of about ten years' experience whose office averaged ninety sales a year and who, himself, owned real estate in the vicinity of petitioners' property, testified that in his opinion such property had a fair market value of $23,000. He based his opinion in part on the rentals received therefrom and in part on recent sales

of comparable property in the neighborhood. He added that values were a little higher there than in other sections of Providence and that Negroes paid higher prices for such property.

Their other expert was Andrew S. Heyman, a broker who also resided on the east side of Providence and based his opinion on "what the rental income would normally be" from real estate similarly situated in the locality and available to Negroes. He also took into consideration recent sales and estimated that petitioners' property had a fair market value of $23,700.

The respondent presented the testimony of one expert, Peter A. Laudati, Jr., who was its appraiser for about 300 parcels of real estate condemned by respondent in petitioners' neighborhood and who had done similar appraisals of parcels of property which were condemned in other sections of Providence. He was a real estate broker in from 40 to 50 transactions in the two years immediately preceding his appraisal of petitioners' property. In his appraisal he used a formula of capitalization of income which he described generally as "how much * * * the average investor looking to purchase this property, would want, as a return on his money." Based on such formula, he estimated the fair market value of petitioners' property to be $15,200. As a check only on such formula he referred to comparable recent sales. In so doing he did not confine his testimony to the section where petitioners' property was situated but also referred to other sections which he testified, over petitioners' objection, were comparable.

To rebut the relevancy of Mr. Laudati's testimony based on the formula he used, petitioners presented the testimony of Stephen L. Reed, a professional appraiser and an instructor in the appraisal of real estate at the University of Rhode Island. He testified that such formula was not approved except for the appraisal of mines, forests, mineral resources and other wasting assets.

The petitioners' first point is based on their exceptions 1 and 2 and relate to substantially the same matter. Exception 1 is to the trial justice's ruling striking petitioner James Jones' answer "Yes, sir" to the question "Have you made any attempt to locate another place for yourself?" On the face of the record the ruling was harmless. But petitioners' counsel claimed the purpose of the question was to lay the foundation for showing the availability of such property as petitioners' and therefore that striking it was prejudicial. Exception 2 is to the ruling of the trial justice excluding the following question: "Have you made—is it your intention, Reverend Jones, to buy some other property?" The petitioners contend that the exclusion of this question further accentuated the alleged prejudice referred to above. They take nothing by these exceptions. Whether premises of a like description to those taken were readily available or whether it was petitioners' intention to seek similar property had no relevancy to the question of what was the fair market value of the condemned premises.

The second point is based on exceptions 5 and 6. Exception 5 relates to the overruling of petitioners' objection to respondent cross-examining their expert witness Wilk as to the price he had paid for a certain parcel of property in the same neighborhood. The objection was based on the fact that the witness had not been examined on this matter in direct examination and, furthermore, because the witness had testified he did not take such property into consideration in valuing petitioners' real estate. Prior to this question the witness had been cross-examined at length, without objection, as to the properties he had purchased, and that these had also been condemned. It was not improper to ask the price he had paid in view of the testimony that he had already given. And in any event the objection even though it was otherwise valid came too late. Exception 6 is to a like question, objection and ruling. Both exceptions are without merit for the above reason.

The third point is based on exceptions 15, 16, 17 and 18 to the allowance, over petitioners' objections, of questions addressed to respondent's expert witness concerning the comparability of certain other sections of Providence with the section where petitioners' property was located. The petitioners contend that the making of such comparisons by the witness was a clear invasion of the jury's province and they cite in support of such contention *Hervey* v. *City of Providence,* 47 R. I. 378. They rely particularly on the following quotation from the opinion in that case on page 380: "Nor was evidence admissible of comparisons of the Hervey location, barns, buildings or land with the same on other farms. The witness should testify to the facts. The making of comparisons is a conclusion to be drawn by the jury."

That quotation, however, is not the only language of the opinion that may have some pertinency to the question here. The language which precedes it clearly indicates that it is within the province of the trial justice to decide preliminarily whether there is similarity of location and that such question is addressed to his discretion. In the case at bar, the trial justice by allowing the witness to express his opinion as to sales in comparable localities, indirectly exercised such discretion and to such exercise no exception lies except for abuse. But assuming that it was error for him not to pass on this question preliminarily before allowing the actual testimony to go to the jury, we are of the opinion, after considering the whole record, that petitioners thereby suffered no prejudice.

The fourth point is based on exception 19 to the following portion of the trial justice's charge to the jury: "Decide this just the same, exactly the same, as if Mr. and Mrs. Jones lives elsewhere, and happened to own this property, and it had a certain value; only in that way can you decide this in accordance with the law." The petitioners urge that this is an incorrect statement of the law and that it

had the direct effect of prejudicing their case with the jury in that it limited consideration of the expert testimony of the value of their property solely to the testimony of Mr. Laudati, since he was the only witness who based his appraisal on such a formula. In support of their argument that the statement was erroneous in law, petitioners cite *Greene* v. *State Board of Public Roads*, 50 R. I. 489.

We are of the opinion that the portion of the charge objected to in the case at bar is not in conflict with anything which was said in the *Greene* case. On the contrary, some of the language therein might be quoted in support of the charge here. For example, the court stated at page 492: " 'The proper inquiry is, not what is the value of the property for the particular use, but what is it worth in the market, in view of its adaptation for that and other uses.' " The petitioners here did not adapt their property to any particular use other than for a dwelling. The mere fact that they personally used one tenement was not an added element of value to be considered by the jury since the true test is market value and not any special value to the owners attributable to the fact that they make their home on the property. Exception 19 is therefore without merit.

In passing we may add that, after reading all the expert testimony, we were unconvinced the jury were prejudiced against petitioners by the portion of the charge to which petitioners objected. On the contrary it appears to us that the jury placed little credit in the testimony of petitioners' witness Heyman and none at all in Wilk. The wider experience of the respondent's witness Laudati on the other hand was strongly probative and apparently weighed heavily with them notwithstanding the adverse criticism of his method of appraisal by the petitioners' witness Reed. In denying the petitioners' motion for a new trial we assume the trial justice weighed the expert testimony in like manner. The fact that the petitioners neither briefed nor argued their exception to such denial leads us to believe that they

must have recognized that his decision in that respect was not clearly wrong.

All of the petitioners' exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Archie Smith,* for petitioners.

*Timothy J. McCarthy, Vincent J. Baccari, James G. Dolan, Jr.,* for respondent.